[No. E000572. Fourth Dist., Div. Two. May 16, 1985.]

NANCY J. WYGANT, Plaintiff and Respondent, v.
VICTOR VALLEY JOINT UNION HIGH SCHOOL DISTRICT,
Defendant and Appellant.

[No. E001451. Fourth Dist., Div. Two. May 16, 1985.]

VICTOR VALLEY TEACHERS ASSOCIATION, Plaintiff and
Respondent, v.
VICTOR VALLEY JOINT UNION HIGH SCHOOL DISTRICT,
Defendant and Appellant.

COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo and Steven J. Andelson for Defendant and Appellant.

Ronald G. Skipper for Plaintiffs and Respondents.

OPINION

**MORRIS, P. J.**—Defendant and appellant, Victor Valley Joint Union High School District (school district), appeals from judgments entered on behalf of plaintiffs and respondents and directing that Ms. Wygant, a certificated teacher, be reclassified on the certificated salary schedule, and that the school district's professional growth policy be rescinded. The two judgments have been joined on appeal because the factual and legal issues are substantially the same.

On appeal the school district contends that the trial court erred in reviewing plaintiffs' claims despite plaintiffs' failure to exhaust their administrative remedies before the Public Employment Relations Board, and in holding that the school district's professional growth program violated the mandate of Education Code section 45028 that certificated employees be uniformly classified on a salary schedule for years of training and years of experience. We affirm the judgments.

FACTS

On February 7, 1983, Ms. Wygant, a certificated teacher in Victor Valley Joint Union High School District, petitioned the trial court for a writ of

mandate, declaratory relief and damages against the school district, based on the legal ground that the school district's professional growth policy (salary policy No. 4912) violated Education Code section 45028. (Sec. 45028 and the professional growth policy will be described in the substantive discussion thereon.) Ms. Wygant had failed to earn the required professional growth units within the time allotted, and was refused credit for two years of experience on the salary schedule.

Later in February, the Victor Valley Teachers Association also petitioned the trial court for a writ of mandate and declaratory relief on the same legal grounds.

The trial court issued the writ of mandate in favor of both plaintiffs, commanding the school district to credit Ms. Wygant for two years of experience and to pay the salary differential due by reason of such reclassification, and commanding the school district to eliminate and rescind the professional growth policy. This appeal followed.

DISCUSSION

I.

*Jurisdiction*

■ The school district contends that the trial court lacked jurisdiction because plaintiffs failed to exhaust their administrative remedies before the Public Employment Relations Board. We disagree.

The Public Employment Relations Board (PERB) provides an administrative remedy for unfair practices and violation of Government Code sections 3540-3549.3. (Gov. Code, § 3541.3, subd. (i).) Where unfair practices are alleged by plaintiff, "[t]he initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board." (Gov. Code, § 3541.5; see *San Diego Teachers Assn. v. Superior Court* (1979) 24 Cal.3d 1, 12 [100 Cal.Rptr. 757, 593 P.2d 838]; *Leek v. Washington Unified School Dist.* (1981) 124 Cal.App.3d 43, 47 [177 Cal.Rptr. 196]; *Los Angeles Council of School Nurses v. Los Angeles Unified School Dist.* (1980) 113 Cal.App.3d 666, 670 [169 Cal.Rptr. 893].)

The problem with the school district's contention is that in this case neither unfair practices nor violation of Government Code sections 3540-

3549.3 are alleged by plaintiffs. Plaintiffs' sole allegation pertinent to this discussion is that the district's professional growth policy violates the uniformity mandated by Education Code section 45028.

We hold that PERB does not have exclusive initial jurisdiction where a plaintiff's allegations are confined solely to a unilateral violation of Education Code section 45028 by a school district. The Government Code expressly provides that "[n]othing contained [in Government Code sections 3540-3549.3] shall be deemed to supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate tenure or a merit or civil service system . . . ." (Gov. Code, § 3540.) The California Supreme Court has held that the intent of section 3540 is to preclude contractual agreements which would alter statutory provisions that mandate particular procedures, protections and entitlements. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 866 [191 Cal.Rptr. 800, 663 P.2d 523].)

Two mandatory statutes are applicable to this case. First, Education Code section 45028 requires that "[e]ffective July 1, 1970, each person employed by a district in a position requiring certification qualifications except a person employed in a position requiring administrative or supervisory credentials, *shall* be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience." (Italics added.)[1] Second, Education Code section 44924 provides that, "Except as provided in Sections 44937 and 44956, any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void." We conclude that where a claim is based solely on violation of Education Code section 45028 the normal jurisdiction of a trial court over civil disputes is not superseded by the area of exclusive jurisdiction of PERB provided by Government Code section 3541.5, at least to the extent the violation of section 45028 is not pursuant to mutual agreement as authorized by Government Code section 3543.2, subdivision (d).

---

[1]Effective July 28, 1983, the Legislature added Government Code section 3543.2, subdivision (d), which states as follows: "Notwithstanding Section 45028 of the Education Code, the public school employer and the exclusive representative shall, upon the request of either party, meet and negotiate regarding the payment of additional compensation based upon criteria other than years of training and years of experience. If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 45028 of the Education Code shall apply." (Stats. 1983, ch. 498, § 128.) The petitions for writ of mandate and declaratory relief were filed prior to the effective date of Government Code section 3543.2, subdivision (d). The judgments of the trial court were filed on August 16, 1983. Furthermore, the school district's policy was not negotiated as required by Government Code section 3543.2. Accordingly, subdivision (d) was not considered in the judgments of the trial court and is not germane to our review of those judgments.

The Government Code is consistent with this conclusion. Government Code section 3541.5, subdivision (b), states that: "The board shall not have authority to enforce agreements between the parties, and shall not issue a complaint on any charge based on alleged violation of such an agreement that would not also constitute an unfair practice under this chapter." Furthermore, trial court resolution without involvement by PERB of a claim limited to Education Code section 45028 does not conflict with the Legislature's desire to ". . . provid[e] a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by such organizations in their professional employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy." (Gov. Code, § 3540.)

The school district does not assert that plaintiffs' alleged unfair practices or violation of Government Code sections 3540-3549.3. Instead, the school district frames their jurisdictional argument as follows: "The Association's contention that the application of the Professional Growth Policy by the Board of Trustees violates Education Code Section 45028 raises a question whether the Board of Trustees was meeting and negotiating in good faith as required under Government Code Section 3543.5(c). [¶] Since there exists a question whether the Board of Trustees negotiated in good faith in the application of the Professional Growth Policy, PERB should have initial exclusive jurisdiction to investigate and adjudicate the issue. This point is well supported by California case law."

In fact, the California case law cited by the school district for this proposition either explicitly (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d at p. 3; *Leek* v. *Washington Unified School Dist., supra,* 124 Cal.App.3d at p. 50; *Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra,* 113 Cal.App.3d at p. 669; *Grant District Education Association, CTA/NEA* v. *Grant Joint Union High School District* (Feb. 26, 1982) PERB Dec. No. 196, 6 PERC ¶ 13064, at p. 223) or implicitly (*Amador Valley Secondary Educators Assn.* v. *Newlin* (1979) 88 Cal.App.3d 254, 257 [151 Cal.Rptr. 724]) involved situations in which plaintiff alleged unfair practices or violation of Government Code sections 3540-3549.3, albeit sometimes in combination with allegations based on other statutory or constitutional grounds (*Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra; Leek* v. *Washington Unified School Dist., supra,* at p. 51); violation of a mandatory provision of the Education Code was not the sole allegation of plaintiff in any of these cases. Indeed, the school district's contention goes too far. Every employee

lawsuit complaining of acts of a school district *qua* employer arguably raises a question of whether a school district was meeting and negotiating in good faith, yet PERB's exclusive jurisdiction is not all-inclusive.

## II.

### *Validity of the Professional Growth Policy*

A. *The Policy*

The school district contends that the trial court erred in ruling that the school district's professional growth program was contrary to the mandate of Education Code section 45028 that certificated employees be uniformly classified on a salary schedule for years of training and years of experience. We agree with the trial court and hold that the professional growth program is unlawful on its face and as applied.

The school district's base salary schedule provides for salary increases based on experience and training. Generally, a teacher moves one step vertically on the schedule for each additional year of experience, and one step horizontally on the schedule for each increment of 15 units of graduate work. Effective September 1, 1982 through August 31, 1983, the salary schedule was as follows:

| CLASS | I | II | III | IV | V |
|---|---|---|---|---|---|
| | | | | | B.A.+60 |
| | B.A. | B.A.+15 | B.A.+30 | M.A. or | Incl. M.A. |
| STEP | Degree | Grad. Units | Grad. Units | M.EQ. | or M.A.+15 |
| 1 | 13,973 | 14,950 | 15,930 | | |
| 2 | 15,091 | 16,069 | 17,047 | 18,027 | |
| 3 | 16,209 | 17,187 | 18,166 | 19,144 | 20,121 |
| 4 | 17,326 | 18,306 | 19,283 | 20,262 | 21,238 |
| 5 | | 19,423 | 20,401 | 21,379 | 22,358 |
| 6 | | 20,540 | 21,519 | 22,498 | 23,477 |
| 7 | | | 22,638 | 23,615 | 24,595 |
| 8 | | | 23,755 | 24,734 | 25,712 |
| 9 | | | | 25,849 | 26,830 |
| 10 | | | | 26,970 | 27,948 |
| 13 | After 3 years or more service in Step 10 | | | 28,087 | 29,065 |

| CLASS | I | II | III | IV | V |
|---|---|---|---|---|---|
| STEP | B.A. Degree | B.A.+15 Grad. Units | B.A.+30 Grad. Units | M.A. or M.EQ. | B.A.+60 Incl. M.A. or M.A.+15 |
| 16 | After 3 years or more service in Step 13 | | | 29,205 | 30,184 |
| 19 | After 3 years or more service in Step 16 | | | | 31,300 |
| 22 | After 3 years or more service in Step 19 | | | | 32,419 |

The school district's professional growth program affects only vertical movement on the salary schedule. Under the professional growth policy "[c]ertificated personnel receiving salary step advancement in the district must complete six (6) semester units or nine (9) quarter units of professional growth each four years." At least two units of the six units must be acquired in acceptable college units. Other areas for which units may be submitted include: (1) attendance and participation in conferences, workshops or forums in the educational field, (2) completion of a Red Cross or Bureau of Mines first aid course, (3) travel, (4) leadership of a professional or civic organization, (5) publication of a paper dealing with an educational problem or work in major or minor field, and (6) vocational experience in industry or business.

The intrinsic problem with the professional growth policy on its face is that it denies credit for years of experience as a teacher based on a failure to obtain professional growth units that have little or nothing to do with those years of experience. Thus, the professional growth policy contravenes the intent behind and wording of Education Code section 45028.

B. *The Law*

Education Code section 45028 states in pertinent part that, "Effective July 1, 1970, each person employed by a district in a position requiring certification qualifications except a person employed in a position requiring administrative or supervisory credentials, *shall* be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience." (Italics added.)

Prior to its amendment in 1969, section 13506 of the Education Code, the predecessor of section 45028, stated that "Uniform allowance *may* be

made in any schedule of salaries for years of training and for years of service." (Stats. 1959, ch. 2, § 13506, p. 958; italics added.) The most significant change was the substitution of the word "shall" for the word "may." (See Stats. 1969, ch. 1314, § 1, p. 2651.)

The Supreme Court analyzed this change in *Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 661 [147 Cal.Rptr. 359, 580 P.2d 1155], and concluded that ". . . one of the lawmakers' aims in enacting the new section was to break away from past reliance on judicial assessments of 'reasonableness' in the classification of teachers and establish a more certain standard of its own. Thus the new statute, as we read it, had the two-fold purpose of (1) *requiring* that teachers be classified for salary purposes, and (2) establishing that such classification proceed *wholly* on a uniform basis of years of training and years of experience."

In interpreting a statute we are required to give its terms normal and ordinary import. (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500].) In addition, the terms must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear. (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].) Experience is ". . . the state, extent, duration, or result of being engaged in a particular activity (as a profession) *or* in affairs generally . . . ." (Webster's Third New Internat. Dict. (1961) p. 800, italics added.) Only the first part of this definition is normal and ordinary in the context of the Education Code; it is inconceivable that the Legislature intended to require teachers to be classified on the salary schedule on the basis of a uniform allowance for years of training and years of experience in affairs generally.

The particular activity or profession we are here concerned with is teaching. Experience as a teacher results from the performance of a teacher's duties. (See *Mayer* v. *Board of Trustees* (1980) 106 Cal.App.3d 476, 488 [165 Cal.Rptr. 655].) Those duties generally include lesson preparation, classroom instruction, grading, parental counseling, and supervision of extracurricular activities of students. (See *Lompoc Federation of Teachers* v. *Lompoc Unified Sch. Dist.* (1976) 58 Cal.App.3d 701, 710 [130 Cal.Rptr. 70], disapproved on other grounds by *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d at pp. 665-666.)

The school district's professional growth policy requires activities that are separate and distinct from these bona fide elements of teaching experience.

Moreover, most of the activities that generate professional growth units do not objectively constitute training. For example, the professional growth policy allows units for travel and service as president or chief administrative officer of a professional or civic organization, but not for raising a child. We agree with former Supreme Court Justices Carter, Shenk and Curtis that ". . . classification of teachers for salary purposes must be reasonable, natural, and based upon a substantial difference germane to the subject, or upon some basis having a reasonable relation to the work assigned." (*Rible v. Hughes* (1944) 24 Cal.2d 437, 450 (dis. opn. [150 Cal.Rptr. 455, 154 A.L.R. 137]); see *Hutton* v. *Gill* (1937) 212 Ind. 164 [8 N.E.2d 818, 820].) The subjectively arguable benefit obtained from complying with the professional growth policy, while admirable as an attempt to broaden teachers as human beings, does not equate to a substantial difference germane to the legislatively mandated salary criteria of years of training and years of experience. Instead, it apparently conflicts with that criteria and the legislative intent behind it.[2]

The Legislature provided a statement of its intent: "It is the intent of the Legislature in amending Section 13506 of the Education Code as provided in Section 1 of this act to establish a uniform base salary schedule in each school district. It is not the intent of the Legislature in this act to limit a school district governing board in developing pay incentive programs." (Stats. 1969, ch. 1314, § 3, p. 2651.)

In analyzing the scope of legislative intent, the Supreme Court stated that "[t]he fact that a district, in order to improve the level of academic attainment of its staff, chooses to do so by setting up special salary categories for those undertaking advanced training can in no way be said to conflict with the principle of uniform classification according to 'years of training and years of experience.' By the same token no conflict would occur should a district decide to subclassify its top 'experience' classification in order to encourage the retention or recruitment of extremely experienced teachers." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.*, *supra*, 21 Cal.3d at pp. 660-661, fn. 5.) Finally, the Supreme Court did ". . . not read the new statute to preclude a district from making reasonable determinations as to the level and quality of 'training' or 'experience' which is to qualify for a particular level of credit within its boundaries." (*Id.*, at p. 661, fn. 6.)

The school district's professional growth policy is not a legitimate pay incentive program because unlike the acceptable pay incentive programs

---

[2]This conclusion regarding legislative intent does not consider newly enacted Government Code section 3543.2, subdivision (d). (See fn. 1, *ante.*)

outlined in *Palos Verdes,* the professional growth policy conflicts with the requirement of uniformity for years of training and experience. The professional growth policy is not an appropriate special salary category or subclassification for those undertaking advanced training. The special salary category cited with approval by *Palos Verdes* was that upheld by *San Diego Federation of Teachers* v. *Board of Education* (1963) 216 Cal.App.2d 758 [31 Cal.Rptr. 146]. "There the district, after notifying certain senior teachers that they would be paid for the following year in the highest existing salary classification (which included those with 'a doctor's degree or equivalent training'), adopted a new salary schedule in which the highest classification was reserved for those with an 'earned doctorate.' The new penultimate classification, into which the subject teachers now fell, had a higher salary range than the former top class, but the new top rating drew an even higher salary." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.,* *supra,* 21 Cal.3d at p. 657, fn. 3.) The new classification was viable because it did not penalize or downgrade the teachers in the new penultimate classification, but rather created an extra reward for those having a doctor's degree. (See *San Diego Federation of Teachers* v. *Board of Education,* *supra,* at p. 766.)

In the instant case a special salary category has not been created. Instead, teachers with uniform years of training and years of experience are impermissibly penalized by being denied credit for experience for failure to obtain professional growth units that are not necessarily related to either training or professional experience.

Nor does the school district's professional growth policy constitute a reasonable determination as to the level and quality of training or experience. In *Mayer* v. *Board of Trustees,* *supra,* 106 Cal.App.3d 476, this court upheld an agreement which provided that at the end of each school year a teacher would be advanced to the next step on the salary schedule only if he or she received a satisfactory performance rating. If a teacher failed to reach that level and quality of experience, the teacher was denied a salary increase for the ensuing year. (*Id.,* at p. 480.) Essentially, that holding was premised upon the conclusion that it was logical to define experience as satisfactory experience. (*Id.,* at p. 487.)

In contrast, here a teacher who performs his or her job at the level and quality necessary to obtain a satisfactory rating can nevertheless be denied the salary step increase his or her peers receive for the ensuing year for failure to satisfy the professional growth policy. This violates Education Code section 45028 because the professional growth policy is not sufficiently related to a teacher's level and quality of experience.

We conclude that the school district's professional growth policy violates Education Code section 45028 because the professional growth policy does not treat years of training and years of experience uniformly for salary purposes.

## C. *The Policy as Applied*

In addition to being facially defective, the school district's professional growth policy is unlawful as applied. This is because, pursuant to the representations of the school district, a teacher is permanently deprived of credit for years of experience accumulated while in a deficient status under the professional growth policy. As stated by counsel for the school district in describing its professional growth policy before the trial court, "If Teacher A fails to complete the unit requirements under the Professional Growth Policy, he will be retained at Step 4, Class III . . . until the units are completed. [¶] Once the units are completed, Teacher A will advance to the next step of the salary schedule . . ., which will be Step 5, Class III, *notwithstanding additional years of experience accrued while retained at Step 4.*" (Italics added.) In explanation of this example, the school district stated that "[t]his rule is used to effectuate the Professional Growth Policy by preventing teachers from recapturing experience credit previously forfeited while retained at a given step because of non-compliance with the Professional Growth Policy. In the absence of such a rule, a teacher would have no incentive to comply with the Professional Growth Policy if he knew he could regain his position on the teacher's salary schedule in the future by skipping over previously forfeited steps."

The result of this application of the school district's professional growth policy is that a teacher who obtains the units necessary to satisfy the professional growth policy, but does so after the four-year time limit, is maintained at a lower step on the salary scale as compared to a teacher who satisfies the professional growth policy within four years, despite having identical years of training, years of experience, *and* professional growth units. Such a result is clearly in conflict with the mandate of Education Code section 45028 that uniform allowance be provided on the salary schedule for years of training and years of experience.

A similar rule was rejected as contrary to Education Code section 45028 by the Second District of the Court of Appeal in *California Teachers Assn. v. Board of Education* (1982) 129 Cal.App.3d 826, 832-833 [181 Cal.Rptr. 432]. There the court addressed a rule that limited teachers who advanced on the salary schedule from one class to the next, upon attainment of a higher educational level, to a one-step increase for experience even though

the teacher had additional years of experience and the new class had steps for those additional steps of experience. (*Id.*, at p. 828.)

The school district concedes the applicability of *California Teachers Assn.* for movement from one class to another, but attempts to distinguish the instant case by asserting that under the professional growth policy all existing teachers have equal opportunity and sufficient time within the four-year cycle to complete the required professional growth units. These facts, however, are not distinguishable from those before the court in *California Teachers Assn.*, wherein it also could have been said that all existing teachers had equal opportunity and sufficient time to complete the necessary graduate units for movement to the next class before reaching the maximum step for experience in their current class. (*California Teachers Assn.* v. *Board of Education, supra,* 129 Cal.App.3d at p. 829.)[3]

Finally, the school district's denial of credit for years of experience to teachers who obtain the required professional growth units after obtaining greater than four years seniority in the district is expressly barred by *Palos Verdes.* The Supreme Court held that where a teacher is precluded from receiving credit for a year of experience within the allowed maximum "solely due to his seniority within the system," the salary schedule does not provide a uniform allowance for years of experience. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d at p. 661, fn. 6.)

### DISPOSITION

The judgments are affirmed.

Rickles, J., concurred.

**KAUFMAN, J.**—I respectfully dissent.

I agree that the respondents were not barred from seeking judicial relief by a failure to exhaust administrative remedies. However, I cannot agree that Education Code section 45028 was intended to foreclose a school district from adopting a policy which in effect tells its teachers their years of experience will not be considered of specific value for purposes of increased

---

[3]Consistent with this conclusion, in *California Teachers Assn.* the school district asserted that the purpose of their rule was to encourage teachers to improve their level of academic attainment earlier rather than later in their teaching careers. (*California Teachers Assn.* v. *Board of Education, supra,* at p. 830.)

salary beyond a certain point (i.e., four years) unless they make that experience meaningful by also completing certain "training" experience within the same time frame.

As for the majority's conclusion that the "training" specified by the board is underinclusive or not as relevant to teaching skills as some other experience the author of the opinion thinks more valuable, the majority clearly invade the province of the governing board of the school district. It is their evaluation that is significant, not that of a majority of this court.

For the reasons set forth in part II of the appellant's reply brief I would reverse both judgments.