[No. F011387. Fifth Dist. May 2, 1990.]

CALIFORNIA TEACHERS' ASSOCIATION et al., Plaintiffs and Appellants v.
LIVINGSTON UNION SCHOOL DISTRICT et al., Defendants and Respondents.

1504

COUNSEL

Tuttle & McCloskey and Ernest H. Tuttle III for Plaintiffs and Appellants.

Atkinson, Andelson, Loya, Ruud & Romo, Paul M. Loya, Peter J. Lucey, Angela K. Kreta and Melbourne N. Gwin, Jr., for Defendants and Respondents.

OPINION

**ARDAIZ, J.**—In October of 1987 appellants California Teachers' Association, local teachers associations and individual teachers filed a petition for

writ of mandate and complaint asking for declaratory relief against respondents, several school districts and their governing boards, including Livingston, Merced, Weaver, Los Banos, Exeter and Springville.[1] Appellants claimed the salary schedules adopted in the various districts violated Education Code section 45028.[2] Appellants filed an amended complaint in April of 1988.

Respondents variously demurred to and/or answered the petition and complaint, each claiming appellants failed to exhaust their administrative remedies, having failed to pursue their complaints first before the Public Employment Relations Board (PERB). Respondents also claimed the salary schedule was permitted under an exception to section 45028 created in Government Code section 3543.2, subdivision (d).

The parties stipulated the trial court could decide two issues:

"1. Whether Government Code Section 3543.2(d) permits Respondents to deviate from the requirements of Education Code Section 45028 in a collective bargaining agreement.

"2. Whether this court o[r] the Public Employment Relations Board (PERB) has jurisdiction over allegations in the Petition which allege that salary schedules contained in the collective bargaining agreements violate Education Code Section 45028."

The trial court, after a hearing, ruled in favor of the school districts and their boards. The judgment read in relevant part: "1. The provisions of the salary schedules challenged by [appellants] have historically been contained in collective bargaining agreements between [Appellants] and Respondents.

"2. Collective bargaining between the parties is governed by the Educational Employment Relations Act ('EERA') found at Government Code Section 3540 et seq.

"3. Government Code Section 3543.2(d) found in the EERA ostensibly authorizes the parties to meet and negotiate regarding the payment of additional compensation based upon criteria other than years of training

---

[1] Three school districts and their boards, Los Banos, Exeter and Springville, were dismissed from the action upon a 1988 amendment to the Education Code; a fourth, Merced, settled with appellants.

[2] All further statutory references are to the Education Code unless otherwise indicated.

and experience notwithstanding the uniform salary requirements of Education Code Section 45028.

"4. The alleged conduct challenged by [Appellants] arguably gives rise to an 'unfair practice' under the EERA or constitutes a violation thereof.

"5. Government Code Section 3541.5 vests the Public Relations Employment Board ('PERB') with exclusive jurisdiction to initially determine whether charges of unfair practice are justified and what remedy is necessary to effectuate the purposes of the EERA. [Appellants] have made no allegation of exhaustion of this administrative remedy.

"6. PERB has original jurisdiction over the matters alleged in this case and this court lacks jurisdiction to hear the matter.

"7. Respondents' demurrer is sustained without leave to amend and, as to Respondents which have answered herein, the Petition is denied."

Appellant filed a timely notice of appeal.

## FACTS

The operative facts are not disputed. Each district adopted, pursuant to collective bargaining agreements, pay schedules for teachers which were arranged in a series of columns. Each column represented the attainment of a particular level of training: the "low" column for teachers with a bachelor's degree; the next column for teachers with a bachelor's degree plus so many units (e.g., 15); and so on. Vertically, each column had several steps related to the number of years' experience the teacher had. Each column topped out at a certain number of years of experience, the lower columns topping out at lower levels—say five, eight or ten years.[3]

Concomitant with these salary schedules was a rule, also agreed upon during collective bargaining, which limited any teacher to movement "over one and up one" on the pay schedule. Thus for example, a teacher in the lowest column who completed fifteen additional units above his or her bachelor's degree the summer between his fifth and sixth years of teaching could move from the low column, step five, to the next column, and up to

---

[3] Both parties included exemplars in their briefs.

step six. However, if the low column's top experience category was five years and the teacher did not complete the fifteen additional units beyond the bachelor's degree until after his or her tenth year of teaching, that teacher could only move "over one and up one" to the second column, sixth step. The loss of experience advancement becomes perpetuated by the "over one, up one" rule.

Because of this rule it is possible to have 2 teachers, both with 15 units above the bachelor's degree who have taught for 10 years, receiving different salaries. If the first teacher completed the additional units before "topping out" on the experience level, he or she would be in the second column, at step 10. However, if the second teacher did not complete the additional units until after being stuck in the first column for four years, he or she would be in the second column, at step six. The first teacher receives a higher salary than the second.

Appellants challenge the validity of these staggered schedules and the restrictive "over one, up one" rule. They contend the schedules and rule have resulted in disparate salaries for teachers with identical experience and training. Appellants maintain these disparate salaries are forbidden by section 45028. Section 45028 provides in relevant part: "(a) Effective July 1, 1970, each person employed by a district in a position requiring certification qualifications, except a person employed in a position requiring administrative or supervisory credentials, shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience. Employees shall not be placed in different classifications on the schedule, nor paid different salaries, solely on the basis of the respective grade levels in which such employees serve."

Respondents reply that the agreed-upon schedules and rule are valid under Government Code section 3543.2, subdivision (d) which created an exception to the cited Education Code section.

Government Code section 3543.2, subdivision (d), provides: "Notwithstanding Section 45028 of the Education Code, the public school employer and the exclusive representative shall, upon the request of either party, meet and negotiate regarding the payment of additional compensation based upon criteria other than years of training and years of experience. If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 45028 of the Education Code shall apply." Further, all respondents claimed that appellants had failed to

exhaust their administrative remedies with PERB before seeking relief in the superior court.

DISCUSSION

*Whether Appellants Failed to Exhaust*
*Their Administrative Remedies With PERB*
*Before Filing the Actions in Superior Court.*

██ Initially, we must determine whether appellants failed to exhaust their administrative remedies with PERB before they could pursue any remedy in the superior court.

Beginning in 1976, the Legislature passed the Education Employment Relations Act (EERA). Government Code section 3540 explains the purpose behind the chapter. "It is the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by the organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy. This chapter shall not supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations, so long as the rules and regulations or other methods of the public school employer do not conflict with lawful collective agreements."

As part of the EERA, the Legislature established PERB. (Gov. Code, § 3541.) Section 3541.3 of the Government Code details the powers and duties of PERB. Included, under subdivision (i) of that section, is: "To investigate unfair practice charges or alleged violations of this chapter, and take such action and make such determinations in respect of these charges or alleged violations as the board deems necessary to effectuate the policies of this chapter." Government Code section 3541.5 goes on to explain: "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board.

Procedures for investigating, hearing, and deciding these cases shall be devised and promulgated by the board and shall include all of the following:

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"(b) The board shall not have the authority to enforce agreements between the parties, and shall not issue a complaint on any charge based on alleged violation of any agreement that would not also constitute an unfair practice under this chapter."

█ This statutory scheme has been consistently interpreted to confer limited jurisdiction to PERB. Mandatory provisions of the Education Code are outside the purview of the board. Conversely, where there is any claim which "arguably" constitutes an unfair labor practice, the courts have deferred to the administrative tribunal. (*Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist.* (1980) 113 Cal.App.3d 666, 670 [169 Cal.Rptr. 893].) "Alleged violations of [the EERA]" also fall under the sway of PERB jurisdiction. (Gov. Code, § 3541.3, subd. (i).)

Upon the claims of respondents, the trial court determined appellants failed to exhaust their administrative remedies as "[t]he alleged conduct challenged by [Appellants] arguably gives rise to an 'unfair practice' under the EERA or constitutes a violation thereof." On appeal, appellants maintain that the sole question raised in their pleadings is whether the salary schedule and rule violate section 45028; PERB lacks jurisdiction over the Education Code section and therefore lacks jurisdiction over appellants' case.

█ To determine the propriety of the trial court's ruling that PERB had jurisdiction in the first place, we must consider whether the genesis of the disagreement here was an arguable unfair labor practice or was rooted in an arguable violation of the EERA. Neither of these issues is readily resolved; each issue requires an exploration of past law in order to understand the current controversy.

### A. *Is There an Arguable Unfair Labor Practice?*

The seminal case in the area of PERB jurisdiction is *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838]. In *San Diego Teachers Assn.,* the California Supreme Court established the criteria by which we determine whether PERB has jurisdiction. In *San Diego Teachers Assn.,* the teachers conducted a strike when contract negotiations failed. Both the teachers and the school districts filed unfair

labor practice claims against one another but PERB held no hearings. The parties went to the superior court and the court issued an injunction against the activities of the teachers. The California Supreme Court determined that the order of the court was void as the district failed to exhaust its administrative remedies.

The court considered three criteria in assessing the issue of the exclusive initial jurisdiction of PERB: "Three main issues are identified: (1) Could PERB properly determine that the strike was an unfair practice under EERA? (2) If it made that determination could it furnish relief equivalent to that which would be provided by a trial court? (3) Did the Legislature intend that PERB would have exclusive initial jurisdiction over remedies against strikes that it properly could find were unfair practices?" (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d at p. 7.) ■ Our consideration of the exhaustion claim, therefore, must first include a determination of whether PERB properly could determine the conduct here was an unfair labor practice. In considering this question, we must construe the activity broadly in order to provide "exclusive jurisdiction over activities arguably protected or prohibited . . . ." (*El Rancho Unified School Dist.* v. *National Education Assn.* (1983) 33 Cal.3d 946, 953 [192 Cal.Rptr. 123, 663 P.2d 893].) The court in *El Rancho* clarified the concept of "arguably prohibited"—" 'whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been presented' to PERB." (*Id.* at p. 956.) Second, we need to consider whether PERB could furnish relief equivalent to that which the court could provide. (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d at p. 7.) Third, we must concern ourselves with whether the Legislature intended PERB to have exclusive initial jurisdiction.

In finding PERB had initial jurisdiction, the court in *San Diego Teachers Assn.* first noted that, by engaging in the strike, the teachers' association "may have committed at least two of the unfair practices forbidden an employee organization"—failure to negotiate in good faith and refusal to participate in impasse procedures, both enumerated unfair acts in the EERA. (Gov. Code, § 3543.6, subds. (c) and (d).) Second, the court found PERB could furnish relief equivalent to that available in the superior court. Absent such equivalent relief a party is not required to exhaust administrative remedies.

The concept of what constitutes an unfair labor practice has provided the focus for a number of cases following *San Diego Teachers Assn.*

In 1980, in *Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra,* 113 Cal.App.3d 666, nurses, librarians and psycholo-

gists brought a class action suit against the school district and the collective bargaining representative claiming the agreement required that they work longer hours than teachers, in violation of two sections of the Education Code, one of which is the earlier version of the provision depended upon here. They specifically pleaded the collective-bargaining representative had violated or breached its duty of fair representation. The trial court held the plaintiffs had failed to exhaust their administrative remedies. The appellate court concurred.

In so holding, the court noted PERB retained initial jurisdiction "in order to resolve disputes which arguably could give rise to an unfair practice claim." (113 Cal.App.3d at p. 670.) The court turned aside a claim that the thrust of the action was tantamount to an attempt to enforce the collective bargaining agreement, over which PERB had no jurisdiction. (Gov. Code, § 3541.5, subd. (b).)

"Finally, although the appellants correctly contend that the Public Employment Relations Board had no authority to enforce the collective bargaining agreement, the matter in this case does not concern itself with the enforcement of the collective bargaining agreement. Instead, the issue in this case was to determine whether the provisions of the collective bargaining agreement constituted unfair practices on the part of the Los Angeles Unified School District and United Teachers Los Angeles." (*Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra,* 113 Cal.App.3d at p. 672.)

Conversely, in *San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841 [187 Cal.Rptr. 432, 654 P.2d 202], the court found that no exhaustion was required when a collective bargaining representative sought to file a civil suit in order to force nonunion members to pay a statutorily approved "service fee." The court, distinguishing an earlier PERB decision, found there was no unfair practice claim, only a contract dispute as to what the union could do.

"*Cumero* [v. *King City High School Dist. Assn.* (Mar. 3, 1982) PERB Decision No. 197] is also distinguishable because it additionally contained numerous issues involving unfair practices which were under the exclusive jurisdiction of PERB. The case at bar solely involves the issue of whether a civil suit may be a remedy for violation of the agreement by the employee.

". . . . Thus, because no unfair practice has been claimed, PERB had no jurisdiction to hear the claims at bar—no administrative remedies were available to be exhausted." (32 Cal.3d at p. 853.)

In 1984, the court in *California School Employees Assn.* v. *Azusa Unified School Dist.* (1984) 152 Cal.App.3d 580 [199 Cal.Rptr. 635] found PERB without jurisdiction. Cafeteria workers, bus drivers and other school personnel claimed entitlement to wages for certain school days where the students had the day off but teachers were required to work. On those days, teachers received pay but the workers did not. The workers claimed under section 45203 that they were entitled to be paid for these days. The trial and appellate courts rejected the district's claim that the workers failed to exhaust their administrative remedies.

"We also reject appellants' contention that the proceedings below could not be brought because an unfair practice charge was required to be filed with the Public Employee Relations Board (PERB) which has exclusive jurisdiction over the initial determination of whether an unfair practice has been committed. Appellants urge that the refusal to pay wages to certain classified employees under section 45203 constitutes an arguably unfair practice.

". . . . . . . . . . . . . . . . . . . .

"Wages are mandatory subjects of bargaining between the representatives of employers and employees. [Citations.] However, the fact that wages are the subject of the dispute at bar does not resolve the question whether refusal to pay wages claimed under section 45203 constitutes an unfair practice. Section 3543.5 of the Government Code lists five unlawful practices of employers and Government Code section 3543.6 is the comparable listing of employee organization activities which are prohibited.

"A review of judicial decisions discussing 'unfair practices' discloses that the activities of representatives of employers or employees in those cases 'arguably' fell within the activities proscribed by Government Code sections 3543.5 or 3543.6.

". . . . . . . . . . . . . . . . . . . .

"These cases lead us to conclude that appellants' refusal to pay the wages claimed by CSEA on behalf of certain of its members does not fall within the purview of Government Code section 3543.5 as an unfair practice. There is nothing in the record here which indicates that the refusal to pay the wages claimed under section 45203 is of the same character as any of the proscribed activities designated as unfair practices under Government Code section 3543.5. . . ." (152 Cal.App.3d at pp. 591-592, fn. omitted.) The court then cuts to the quick of the question, and continues, finding:

"Manifestly, the refusal to pay the claimed wages stems from the interpretation given section 45203 by appellants. We have found no authority for the proposition that an employer's interpretation of a statute, whether correct or incorrect, which adversely affects the rights of its employees to wages constitutes an unfair practice which should be left for the PERB to determine in the first instance. While an interpretation of a statute adverse to the employee by the employer may be unfair in the lay sense, such a result does not necessitate a conclusion that it is also an 'unfair practice' within the meaning of Government Code section 3543.5.

"We conclude that the refusal to pay wages claimed under section 45203 to the classified employees represented by CSEA does not constitute an arguably unfair practice which the PERB should determine in the first instance." (152 Cal.App.3d at pp. 592-593.)

In affirming the trial court's issuance of the requested writ of mandate, the court in *California School Employees Assn.* v. *Travis Unified School Dist.* (1984) 156 Cal.App.3d 242 [202 Cal.Rptr. 699], decided there was no failure to exhaust administrative remedies when the petitioners failed first to go to PERB. School bus drivers were seeking reimbursement for expenses under section 44032 when they transported students to athletic or extracurricular events. Although the failure to reimburse the drivers was pursuant to the negotiated collective bargaining agreement, the court held PERB did not have jurisdiction.

"The District argues further for PERB jurisdiction on the following grounds: (1) its refusal to include meal reimbursement in the collective bargaining agreement was a refusal to bargain in good faith, (2) a refusal to bargain in good faith is an unfair practice by an employer under Government Code section 3543.5, and (3) PERB has exclusive initial jurisdiction to determine charges of unfair practices under Government Code section 3541.5. This argument is irrelevant since the District's obligation to reimburse its employees for actual and necessary expenses is fixed by statute and, as we stated previously, exists independently of the collective bargaining agreement. Consequently, the employees may sue to enforce reimbursement and PERB jurisdiction does not lie." (152 Cal.App.3d at p. 250.)

 In light of the foregoing, we can now give contours to the respondents' argument that appellants' complaint is really a claim of an unfair labor practice. Respondents contend that any flaws, faults or illegalities embodied within the negotiated agreement must be the result of either the union failing to represent the teachers fairly, or school districts failing to meet and negotiate in good faith—unfair labor practices. Thus, from re-

spondents' point of view, appellants' complaints that the provisions of the agreement are illegal are essentially complaints of unfair labor practices. Respondents particularly depend upon the case of *McCammon* v. *Los Angeles Unified School Dist.* (1987) 195 Cal.App.3d 661 [241 Cal.Rptr. 1] to support their position.

An analysis of respondents' argument begins with *Wygant* v. *Victor Valley Joint Union High School Dist.* (1985) 168 Cal.App.3d 319 [214 Cal.Rptr. 205]. In *Wygant,* the teachers sought reclassification on the salary schedule and rescission of the district's professional growth policy. The policy required that a teacher complete so many units of professional growth within a four-year period in order to advance on the experience portion of the salary schedule. Ms. Wygant failed to earn sufficient professional growth units within the four-year period and was denied credit for two years of experience. She claimed this policy violated section 45028.

The appellate court rejected the district's claim that plaintiffs failed to exhaust their administrative remedies.

"The problem with the school district's contention is that in this case neither unfair practices nor violation of Government Code sections 3540-3549.3 are alleged by plaintiffs. Plaintiffs' sole allegation pertinent to this discussion is that the district's professional growth policy violates the uniformity mandated by Education Code section 45028." (*Wygant* v. *Victor Valley Joint Union High School Dist., supra,* 168 Cal.App.3d at pp. 322-323.) The court went on to state: "We hold that PERB does not have exclusive initial jurisdiction where a plaintiff's allegations are confined solely to a unilateral violation of Education Code section 45028 by a school district. The Government Code expressly provides that '[n]othing contained [in Government Code sections 3540-3549.3] shall be deemed to supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate tenure or a merit or civil service system . . . .' (Gov. Code, § 3540.) The California Supreme Court has held that the intent of section 3540 is to preclude contractual agreements which would alter statutory provisions that mandate particular procedures, protections and entitlements." (*Id.* at p. 323.)[4]

The court rejected attempts to transform plaintiffs' complaint into a claim that the district failed to meet and negotiate in good faith. The court

---

[4] In deciding the jurisdiction question, the court noted the newly enacted subdivision (d) of Government Code section 3543.2. The statute was found inapplicable as the challenged agreement was reached prior to its effective date. The statute was thus not a factor in the court's decision. (*Wygant* v. *Victor Valley Joint Union High School Dist., supra,* 168 Cal.App.3d at p. 323, fn. 1.)

noted in each of the cases cited by the school district that there was an explicit or implicit allegation of unfair practices or violation of the Government Code in conjunction with other claims.

"[V]iolation of a mandatory provision of the Education Code was not the sole allegation of plaintiff in any of these cases. Indeed, the school district's contention goes too far. Every employee lawsuit complaining of acts of a school district *qua* employer arguably raises a question of whether a school district was meeting and negotiating in good faith, yet PERB's exclusive jurisdiction is not all-inclusive." (168 Cal.App.3d at pp. 324-325.)

The case respondents depend on, *McCammon* v. *Los Angeles Unified School Dist., supra,* 195 Cal.App.3d 661, ostensibly follows *Wygant.* In *McCammon,* the court found exclusive jurisdiction in PERB when a teacher sought relief in superior court for an alleged violation of section 45028. The claim of the teacher surrounded the ability of the district to limit the teacher's initial placement on the salary schedule, failing to credit the teacher for all the training or experience he or she may have acquired prior to coming to that school district. Beginning in 1985, the school assumed discretion to waive the limitation which previously had applied uniformly. Some teachers hired after that date received higher salaries than McCammon even though they had equal or less training and/or experience than McCammon. As here, the school district in *McCammon* contended the deviations from the mandates of section 45028 were authorized under Government Code section 3543.2, subdivision (d).

In finding PERB had initial jurisdiction, the court stated: "We believe that incorrect placement on the salary table constitutes an unfair practice." (*McCammon* v. *Los Angeles Unified School Dist., supra,* 195 Cal.App.3d at p. 664.) The court distinguished *Wygant.*

"*Wygant* is not on point, because at bench we do not have a *unilateral* violation of section 45028. In *Wygant* the offending policy was not contained in the collective bargaining agreement. McCammon concedes that when the District hired him the salary table was enshrined in a collective bargaining agreement, although the District had invented it in the pre-UTLA period. Thus, not only had the District allegedly violated section 40528, but the UTLA had acquiesced in the alleged violation. This would constitute a violation of its own duty of fair representation owed to McCammon.

"Under the circumstances the PERB has the experience and expertise to examine the question in the first instance. The *Wygant* court came to the

same conclusion: 'We conclude that where a claim is based solely on violation of Education Code section 45028 the normal jurisdiction of a trial court over civil disputes is not superseded by the area of exclusive jurisdiction of PERB provided by Government Code section 3541.5, at least *to the extent the violation of section 45028 is not pursuant to mutual agreement* as authorized by Government Code section 3543.2, subdivision (d.)' [Citation.] The reference to Government Code section 3543.2, subdivision (d) was unnecessary; *any* agreement logically renders the violation nonunilateral, and appropriately before the PERB." (195 Cal.App.3d at p. 665.)

The court in *McCammon* appears to hold that any dispute which surrounds an act or conduct pursuant to a negotiated agreement necessarily raises the specter of an unfair labor practice. The court in *Wygant* had stated, ". . . PERB does not have exclusive initial jurisdiction where a plaintiff's allegations are confined solely to a unilateral violation of Education Code section 45028 by a school district." (*Wygant, supra,* 168 Cal.App.3d at p. 323.) The *McCammon* opinion turns this statement on its head; it universalizes on the obverse of *Wygant*'s statement to find PERB does have exclusive jurisdiction where the allegations include a claimed violation of section 45028 pursuant to a bilateral agreement. We think this leap in logic is without foundation. The proposition announced in *McCammon* is belied by the cases cited above and indeed by *Wygant* itself. We are not alone in our disagreement with the conclusions of *McCammon.*

The case of *United Teachers of Ukiah* v. *Board of Education* (1988) 201 Cal.App.3d 632 [251 Cal.Rptr. 499], addressing the same issue as *McCammon,* rejected the conclusions of the *McCammon* court. In *Ukiah,* teachers and the collective bargaining representative sought a writ of mandate against the district and board of education based upon a claimed violation of section 45028. The district had, since 1970, limited all teachers coming from outside the district to credit for five years' experience, even if their actual experience was greater. In 1982, the district, for the first time, credited a teacher coming from outside the district with more than five years' experience. Three other teachers received similar dispensation from the five-year limitation rule. The district sought to justify its action under a clause in the collective bargaining agreement which provided: " 'The Board also reserves the right to make desirable adjustments and to grant reimbursements for certain extra duties and assignments.' " (*Id.* at p. 636.)

In deciding the plaintiffs had not failed to exhaust their administrative remedies, the court discussed both *Wygant* and *McCammon.* The court followed *Wygant.* "We find nothing in the case or statutory law which requires that claims which assert only violations of the Education Code be

directed to the PERB simply because the defendant contends the EERA may be implicated in the resolution of the claim. To the contrary, we reject appellant's implicit contention that defendants may divest the courts of jurisdiction over Education Code violations simply by framing their defense in a fashion that arguably involves the EERA." (*United Teachers of Ukiah* v. *Board of Education, supra,* 201 Cal.App.3d at pp. 638-639.)[5]

The *Ukiah* court explicitly rejected following *McCammon* insofar as it suggested PERB had initial jurisdiction over any "nonunilateral" claimed violation of the Education Code as it arguably involved a breach of the duty of the collective bargaining representative under the EERA to fairly represent the teachers. The collective bargaining representative is without power to negotiate or waive the mandatory provisions of the Education Code; any provision violative of the Education Code is null and void. (§ 44924.)

Section 44924 provides in pertinent part: "Except as provided in Sections 44937 and 44956, any contract or agreement express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void."[6] The *invalidity* of such provisions, according to the court in *Ukiah,* deprives us of the ability to characterize the challenged provision as "nonunilateral." (*United Teachers of Ukiah, supra,* 201 Cal.App.3d at p. 639.)

The panel in *Dixon* v. *Board of Trustees* (1989) 216 Cal.App.3d 1269 [265 Cal.Rptr. 511] also takes *McCammon* to task. There a teacher at the top salary "retired," only to return later to come back to work for the same school district. Her salary upon rehirement was lower than it had been "due to a provision contained in the collective bargaining agreement." (*Id.* at pp. 1273-1274.) She sought a writ of mandate to require the district to place her at her former salary level. Ultimately, she obtained relief from the superior court. On appeal, the district claimed, among other issues, that Dixon had failed to exhaust her administrative remedies.

The *Dixon* court rejects *McCammon*'s bald assertion that incorrect placement on a salary schedule constituted an unfair labor practice. (*Dixon, supra,* 216 Cal.App.3d at p. 1279.) The *Dixon* court, agreeing with *Ukiah,* stated: "Moreover, to the extent the alleged section 45028 violation in the case at bench was based on collective bargaining agreements negotiated

---

[5] In so holding, the court noted that the limited application of Government Code section 3543.2, subdivision (d)—the trial court finding the Education Code violations preceded the effective date of the statute—did not provide a basis for deviating from *Wygant. (Id.* at p. 638, fn. 5.) We shall address the effects of Government Code section 3543.2 in part B, *infra.*

[6] Sections 44937 and 44956 pertain to the rights of terminated employees.

prior to July 28,1983 (the effective date of Gov. Code, § 3543.2, subd. (d)), such a provision, even if mutually negotiated, would be rendered null and void by section 44924 and therefore outside of PERB's initial jurisdiction. (*United Teachers of Ukiah* v. *Board of Education, supra,* 201 Cal.App.3d at p. 639.)" (*Dixon, supra,* 216 Cal.App.3d at p. 1280, fn. omitted.)

Finally, here, in rejecting *McCammon* and respondents' attempt to transform appellants' complaint into an unfair labor practice, we look to two recent PERB decisions. In May of 1988 PERB issued two decisions, *Gorcey* v. *Oxnard Educators Assn.* (May 5, 1988) PERB Decision No. 664 and *Gorcey* v. *Oxnard School Dist.* (May 26, 1988) PERB Decision No. 667. In those cases, PERB found it had no jurisdiction "to enforce contracts between parties or to enforce the Education Code"; where the sole claim is violation of the Education Code, jurisdiction belongs in the superior court, not with PERB. Thus, the board declined to hear claimed violations of section 45028 relating to a new salary schedule which resulted in some teachers with identical training and experience receiving different salaries. The board did, however, find jurisdiction existed to determine whether the claim of conduct violating Government Code section 3543.2, subdivision (d) constituted an unfair labor practice.

We conclude the analysis of the courts in *Ukiah, Dixon* and *Wygant* is the more persuasive. Like the court in *Ukiah*, we find nothing supportive of the contention that claims "which assert only violations of the Education Code be directed to PERB simply because the defendant *contends* the EERA may be implicated in the resolution of the claim." (*United Teachers of Ukiah* v. *Board of Education, supra,* 201 Cal.App.3d at pp. 638-639, italics added.) We reject, therefore, respondents' claim, under authority of *McCammon,* that the complaint below is one which arguably constitutes an unfair labor practice. On the record before us, nothing supports the trial court's conclusion that an unfair labor practice has been claimed, invoking the jurisdiction of PERB. Our analysis of the jurisdictional issue does not, however, end here.

### B. *Is There an Arguable Violation of the EERA?*

Respondent also argues PERB has initial jurisdiction as the agreement was based upon Government Code section 3543.2, subdivision (d), a part of the EERA. A repetition of section 3543.2, subdivision (d) is necessary to aid our discussion.

"Notwithstanding section 45028 of the Education Code, the public school employer and the exclusive representative shall, upon the request of

either party, meet and negotiate regarding the payment of additional compensation based upon criteria other than years of training and years of experience. If the public school employer and the exclusive representative do not meet mutual agreement, then the provisions of section 45028 of the Education Code shall apply." In effect, respondents argue section 3543.2, subdivision (d) of the Government Code allows the provisions of section 45028 to be disregarded by agreement. Further, they maintain that since Government Code section 3543.2, subdivision (d) is contained in the EERA, PERB is vested with initial jurisdiction to determine a violation of its chapter expressing its authority and duties.

"The board shall have all of the following powers and duties:

". . . . . . . . . . . . . . . . . . .

"(i) To investigate unfair practice charges *or* alleged violations of this chapter, and take such action and make such determinations in respect of these charges or alleged violations as the board deems necessary to effectuate the policies of this chapter." (Gov. Code, § 3541.3, subd. (i), italics added.)

We agree PERB has initial jurisdiction to investigate alleged violations of the chapter. However, we are not certain that claims which allege violation of section 45028 are, in essence, alleging a violation of Government Code section 3543.2, subdivision (d), such that PERB rightfully has initial jurisdiction.

In order to appreciate the respondents' contentions surrounding Government Code section 3543.2, subdivision (d), we must understand the history of section 45028.

In 1978, the California Supreme Court addressed problems surrounding section 13506 (subsequently renumbered section 45028). (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650 [147 Cal.Rptr. 359, 580 P.2d 1155].) The court was responding to an amendment of section 13506. Prior to its amendment in 1969, section 13506 provided in relevant part: " 'In cities, teachers of beginners shall be ranked in the salary schedule with the highest salaried teachers in the elementary grades of equal training and experience.

"Uniform allowance *may* be made in any schedule of salaries for years of training and years of service.' " (*Palos Verdes, supra,* 21 Cal.3d at p. 655, italics in original.)

This language had been earlier interpreted: "[W]hile 'enjoin[ing] on [boards of education], within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience . . . does not prevent the Board from making reasonable classifications' [citation], and such classifications were to be upheld unless they were 'arbitrary, discriminatory or unreasonable.'" (*Palos Verdes, supra,* 21 Cal.3d at p. 655.)

Ultimately, this earlier language of section 13506 was interpreted in *Lawe* v. *El Monte School Dist.* (1968) 267 Cal.App.2d 20 [72 Cal.Rptr. 554], as reiterated in *Palos Verdes*: "'It is within the province of the governing board of the school district to determine the extent to which credit is to be given for teaching experience outside the district [citation] and a court is not free to interfere with such determination if the policy is reasonable in nature and is applied fairly and without discrimination. [Citations.]

"'In the present case there was no abuse of discretion on the part of the governing board of the school district in not permitting the use of approved outside experience as a basis for advancement to a step higher than the fourth step. Such a limitation tended to stabilize continuity of service within the district of experienced teachers and tended to confine the resort to outside teaching experience to those less experienced teachers who had more to gain thereby. Moreover, the prospect of credit for such outside experience could serve as a means of attracting teachers new in the profession to the El Monte School District. The record shows that such policy was applied fairly and without discrimination.'" (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d at p. 657, quoting *Lawe* v. *El Monte School District, supra,* 267 Cal.App.2d at pp. 22-23.)

After considerable discussion, the Supreme Court concluded the amended section 13506 was intended to limit the means of classifying teachers' salaries solely to criteria based upon years of training and years of experience.

"Thus the new statute, as we read it, had the twofold purpose of (1) *requiring* that teachers be classified for salary purposes, and (2) establishing that such classification proceed *wholly* on a uniform basis of years of training and years of experience. One effect of this action was to eliminate the possibility of future results of the type exemplified by *Lawe*, by which a district, while granting a given maximum of credit for outside experience, makes such credit available on less than a uniform basis to all teachers." (*Palos Verdes, supra,* 21 Cal.3d at p. 661, fn. omitted, italics in original.)

This interpretation of the amended section, now numbered section 45028, was followed in *California Teachers Assn.* v. *Board of Education* (1982) 129 Cal.App.3d 826 [181 Cal.Rptr. 432] (*Whittier*). The *Whittier* court noted that prior to the amendment, courts "had upheld differentials in experience credits, in fixing teachers' salaries, as long as the differentials were 'reasonable.'" (*Id.* at p. 830.)

Thus, the Supreme Court and the *Whittier* court concluded that years of education and years of experience under the section were the only criteria that could be used in setting teachers' salaries. In 1983, the Legislature passed section 3543.2, subdivision (d) of the Government Code. (See *Wygant* v. *Victor Valley Joint Union High School, supra,* 168 Cal.App.3d at p. 323, fn. 1.)

Government Code section 3543.2, subdivision (d) says quite plainly that the parties can meet and confer "regarding the payment of additional compensation based upon criteria other than years of training and years of experience." The section does not abrogate section 45028; in fact it specifically notes that if the parties fail to agree mutually upon such other criteria, "then the provisions of Section 45028" apply.

██ Respondents argue that section 3543.2, subdivision (d) of the Government Code allows the parties, by agreement, to create disparity in compensation where there is no disparity in training and experience. In effect, respondents would restore pay differentials that were permissible prior to the amendment of section 13506 (now § 45028) as long as it was by agreement. We cannot agree.

We read Government Code section 3543.2, subdivision (d) as simply loosening the interpretation given section 45028 and allowing the parties to reach agreement on criteria that are separate from years of training and years of experience. Our reading of the Government Code section takes into consideration the *Palos Verdes* interpretation of section 45028 that an employee's years of training and years of experience are the only criteria usable in setting base salaries. Government Code section 3543.2 allows "additional compensation" to be paid based upon agreed criteria other than years of training and years of experience. In other words, it permits additional compensation for additional criteria other than years of training and years of experience. But, there must be some criteria other than training and experience to support disparate pay between teachers with like training and experience.

The opinion in *San Francisco Classroom Teachers Assn.* v. *San Francisco Unified School Dist.* (1987) 196 Cal.App.3d 627 [242 Cal.Rptr. 352]

supports this interpretation. In *San Francisco,* a provision almost identical to the "over one, up one" rule, in a bargained-for agreement, was expressly rejected as violative of section 45028. The court considered the effect of section 3543.2, subdivision (d) on the limits of the agreements the parties could enter into. Noting that this type of provision was rejected in *California Teachers Assn.* v. *Board of Education, supra,* 129 Cal.App.3d 826 and in *Wygant, supra,* 168 Cal.App.3d 319, the court held: "Thus the district's placement policy violates the uniformity requirement of Education Code section 45028 as interpreted in *Palos Verdes* and its progeny. The trial court also erred in holding Government Code section 3543.2, subdivision (d) supersedes section 45028 as to the association's second cause of action. On its face subdivision (d) 'has eroded the mandatory rigidity' of section 45028 only to the extent of allowing '*additional compensation* based upon criteria *other than* years of training and years of experience.' (Italics added.) For example, *Wygant*'s professional growth policy employs criteria 'other than years of training and years of experience,' e.g., attendance and participation in conferences, workshops or forums, travel, organizational leadership, publication, business experience (*Wygant, supra,* 168 Cal.App.3d at p. 326), although it does not provide 'additional compensation' therefor[ ].

"As another example, Government Code section 3543.2, subdivision (d), would allow a negotiated one-time *equal* distribution among all teachers (regardless of years of training and years of experience) of 'extraordinary funds' (e.g., lottery receipts) as a bonus *in addition* to the remuneration authorized by the base salary schedule, notwithstanding Education Code section 45028. (69 Ops.Cal.Atty.Gen. 268 (1986).) By contrast, the policy at issue here satisfies neither the 'additional compensation' nor the 'other criteria' prong of Government Code section 3543.2, subdivision (d), and is thus governed by Education Code section 45028." (*San Francisco Classroom Teachers Assn.* v. *San Francisco Unified School Dist., supra,* 196 Cal.App.3d at p. 635, fn. omitted, italics in original.)

The import of *San Francisco* is clear—teachers of equal training and experience must be paid the same unless there is some additional bargained-for factor pursuant to section 3543.2, subdivision (d) that creates a distinction.[7]

Respondents contend *San Francisco* was decided without the benefit of *McCammon* and, presumably, that *San Francisco* was wrongly decided. While we do not agree *San Francisco* was wrongly decided, we do find a

---

[7] We do not conclude or imply the criteria given by way of example in *San Francisco* are exhaustive, neither do we address exceptions that may be made for newly hired personnel. (§ 45028, subd. (b).)

determination of whether the present agreement violates section 45028 is not dispositive of whether initial resolution of that question should rest with PERB or the court under the provisions of section 3543.2, subdivision (d). The court in *San Francisco* did not address this issue.

Understanding now the genesis and background of Government Code section 3543.2, we can consider properly respondents' contention regarding a violation of that section.

Respondents maintain that since Government Code section 3543.2, subdivision (d) is contained in EERA, whether or not its provisions have been violated falls within the jurisdiction of PERB. In this argument, respondents rely on Government Code section 3541.3, subdivision (i), delineating the Board's "powers and duties: . . . [t]o investigate unfair practice charges or alleged violations of this chapter . . . ." In effect, respondents argue that PERB has the authority to determine whether the alleged conduct herein is arguably protected by the provisions of section 3543.2, subdivision (d) and thus, has initial jurisdiction.

We fail to see how unsuccessful attempts to take advantage of Government Code section 3543.2, subdivision (d) constitute a violation thereof, or how, even if PERB found a contract did not take advantage of Government Code section 3543.2, subdivision (d), it could determine and remedy the possible resultant violation of section 45028.

Government Code section 3543.2, subdivision (d) provides that an agreement which comports with its terms does not violate section 45028. If the agreement fails to comport with the requirements of Government Code section 3543.2, subdivision (d), the agreement may violate section 45028, but not subdivision (d). Subdivision (d) does not dictate or limit the provisions of a bargained-for agreement; thus, an agreement cannot "violate" subdivision (d) because of its terms.[8]

In an agreement where salary differentials are based on no criteria other than years of training and years of experience, and those similarly situated are paid differently, it is not Government Code section 3543.2, subdivision (d) that forbids such conduct but section 45028. The failure to take advan-

---

[8] We do not address purported violations with respect to failure to meet and confer or of enforcement of agreements of the parties. We deal here with a completed agreement. "(b) The board shall not have the authority to enforce agreements between the parties, and shall not issue a complaint on any charge based on alleged violation of any agreement that would not also constitute an unfair practice under this chapter." (Gov. Code, § 3541.5, subd. (b); and see *Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259 [177 Cal.Rptr. 888].)

tage of Government Code section 3543.2, subdivision (d) does not violate that section.

Here, the parties essentially dispute whether the factors used to create salary differentials involve criteria other than years of training and years of experience. Even if PERB determined the agreement did not involve any additional criteria, the agreement and conduct of the parties does not violate this section; it does violate section 45028. Government Code section 3543.2, subdivision (d) merely provides that, in its absence, the conduct would be impermissible under section 45028; by its existence, certain conduct does not constitute a violation of section 45028. Negotiated agreements which fail to take advantage of the dispensation in Government Code section 3543.2 do not violate that section; they may violate section 45028.

## CONCLUSION

In assessing whether PERB has exclusive jurisdiction, we harken back to the considerations enunciated by the California Supreme Court in *San Diego Teachers' Assn.* and *El Rancho.* Could PERB determine that an agreement in violation of section 45028 was an arguably unfair labor practice? We have found above that bargaining which results in a waiver of an Education Code provision such as section 45028 is not an unfair labor practice. Could PERB determine the agreement violates Government Code section 3543.2, subdivision (d) and furnish relief equivalent to that which the courts could provide? In the instant case, there is no violation of the Government Code to be remedied. There is no contention of a failure to meet and confer, and it is not Government Code section 3543.2, subdivision (d) that precludes violations of section 45028; it merely provides an exception if the parties do agree to additional criteria. There are no "alleged violations of the chapter" because the chapter does not direct itself to the dispute here. PERB has no authority to remedy conduct not expressly or impliedly proscribed by its governing statutes. In assessing whether the conduct is "arguably prohibited" and " 'identical to . . . or different from . . . that which could have been presented' to PERB," other than respondents' unresponsive cant that Government Code section 3543.2, subdivision (d) allows the agreement, no basis has been presented to us as to how PERB could entertain or resolve the dispute here. (*El Rancho Unified School Dist. v. National Education Assn., supra,* 33 Cal.3d at p. 956.)

The parties stipulated that the trial court could both decide the jurisdictional issue and determine whether Government Code section 3543.2, subdivision (d) permitted deviation from the mandates of section 45028. In making its finding, the court stated that "[t]he alleged conduct challenged

by [Appellants] arguably gives rise to an 'unfair practice' under the EERA or constitutes a violation thereof." We have concluded the trial court's jurisdictional resolution was erroneous; jurisdiction lies properly with the superior court to hear appellants' claim that the salary agreement and "over one, up one" rule violates section 45028.

## DISPOSITION

The order of the trial court denying the petition for writ of mandate and dismissing the request for declaratory relief is reversed; the case is remanded for further proceedings consistent with this opinion. Costs to appellants.

Best, Acting P. J., and Thaxter, J., concurred.

A petition for a rehearing was denied May 31, 1990. and respondents' petition for review by the Supreme Court was denied August 1, 1990.